No. 20-4129

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                                *Plaintiff/Appellee*,

v.

PHILIP BERNARD FRIEND,
                                *Defendant/Appellant.*
_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. Henry E. Hudson)
_____

REPLY BRIEF OF THE APPELLANT
_____

GEREMY C. KAMENS
Federal Public Defender

Joseph S. Camden
Robert J. Wagner
Assistant Federal Public Defenders
Counsel for Appellant
701 East Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0800
robert_wagner@fd.org
joseph_camden@fd.org

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Argument.................................................................................................1

I.  The Sentence Was Procedurally Unreasonable Because the District Court Did Not Explain "Whether and Why" It Rejected Non-Frivolous Mitigation Arguments....................................................................................1

    A.  The District Court Did Not Explain Its Rejection of Mitigation Arguments in Light of the Statutory Sentencing Factors.....................4

    B.  The District Court Violated the Mandate...............................................7

II.  The Sentence Was Substantively Unreasonable Because the District Court Did Not Weigh Philip Friend's Youth and Related Constitutionally-Required Mitigation Against the Seriousness of the Offense.........................................................................................8

III.  The Sentence Violated the Eighth Amendment, Which Forbids Not Only Mandatory Life Without Parole For Juveniles, But Any Sentence For a Non-Incorrigible Juvenile That Denies A Meaningful Opportunity to Reenter Society ....................................................12

    A.  The Eight Amendment Forbids Discretionary Term-of-Years Sentences That Deprive a Corrigible Juvenile of a Meaningful Opportunity for Life Outside Prison ...................................................15

        1.  The Eight Amendmen is Not Limited to Mandatory Sentences....................................................................................15

        2.  The Eight Amendment Applies to Term of Years Sentences, Not Just Formal Life Sentences..............................17

        3.  The Fifty-Two Year Sentence Does Not Provide a Meaningful Opportunity to Demonstrate Rehabilitation Outside Prison.........................................................................19

    B.  Compassionate Release is Not Equivalent to Parole ..........................21

    C.  This Case Does Not Involve Multiple Consecutive Sentences...........23

i

Conclusion ...........................................................................................................26

Certificate of Compliance

Cases

*Ali v. Roy*, 950 F.3d 572 (8th Cir. 2020)....................................................25

*Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014) ...................................... 18, 20

*Budder v. Addison*, 851 F.3d 1047, 1053, n.4 (10th Cir. 2017) ....................... 18, 25

*Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012) .................................................17

*Carter v. State*, 192 A.3d 695 (Md. 2018) ....................................................... 18, 20

*Casiano v. Comm'r of Correction*, 115 A.3d 1031, 1046 (Conn. 2015).......... 18, 20

*Graham v. Florida*, 560 U.S. 58 (2010) .......................................................... 19, 20

*Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) ...............................................7

*Mangum v. Hallembeak*, 910 F.3d 770, 775 (4th Cir. 2018)......................................7

*McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016).........................................18

*Miller v. Alabama*, 560 U.S. 460 (2012) ........................................................ *passim*

*Mistretta v. United States*, 488 U.S. 361, 365-66 (1989) ........................................10

*Montgomery v. Louisiana*, 136 S.Ct. 718 (2016) ........................................... *passim*

*Moore v. Biter*, 725 F.3d 1184, 1194 (9th Cir. 2013)...........................................18

*O'Neil v. Vermont*, 144 U.S. 323, 332 (1892) ........................................... 23, 24, 26

*People v. Contreras*, 411 P.3d 445, 455. (Cal. 2018)...................................... 18, 20

*People v. Reyes*, 63 N.E.3d 884, 888 (Ill. 2016)....................................................18

*Peugh v. United States*, 569 U.S. 530 (2013) .......................................................11

*State v. Moore*, 76 N.E.3d 1127, 1138 (Ohio 2016)................................................18

*State v. Nathan*, 522 S.W.3d 881 (Mo. 2017) (en banc)................................. 17, 26

*State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013) ................................................. 18, 20

*State v. Shanahan*, 445 P.3d 152, 159 (Idaho 2019)................................................18

*State v. Slocumb*, 827 S.E.2d 148 (S.C. 2019)................................................. 17, 26

*State v. Zuber*, 152 A.3d 197, 212 (N.J. 2017) ................................................. 18, 20

*Sumner v. Shuman*, 483 U.S. 66, 83 (1987)................................................................20

*United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017)....................................4, 5

*United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019) ..........................................11

*United States v. Chandia*, 675 F.3d 329, 342 (4th Cir. 2012) ...................................9

*United States v. Guglielmi*, 929 F.2d 1001 (4th Cir. 1991) .......................................5

*United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016) ...........................17

*United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010)....................................4, 5

*United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007)....................................12

*United States v. Rivera-Santana*, 668 F.3d 95, 105-06 (4th Cir. 2012) ...................9

*United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019) ....................................4, 5

*United States v. Sparks*, 941 F.3d 748 (5th Cir. 2019) ............................................17

*United States v. Webb*, 965 F.3d 262, 271 (4th Cir. 2020)....................................4, 5

## Constitutional Provisions, Statutes, and Rules

U.S. Const. amend. VIII........................................................................*passim*

18 U.S.C. § 3553(a) ........................................................................ *passim*

18 U.S.C. § 3582............................................................................. 13, 22

28 U.S.C. § 994(t) ..............................................................................23

No. 20-4129
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

PHILIP BERNARD FRIEND,
*Defendant/Appellant*.
_____

On Appeal From the United States District Court
for the Eastern District of Virginia
Richmond Division (The Hon. Henry E. Hudson)
_____

REPLY BRIEF OF THE APPELLANT
_____


## ARGUMENT

I.    THE SENTENCE WAS PROCEDURALLY UNREASONABLE
      BECAUSE THE DISTRICT COURT DID NOT EXPLAIN
      "WHETHER AND WHY" IT REJECTED NON-FRIVOLOUS
      MITIGATION ARGUMENTS

Philip Friend was resentenced after a remand with specific instructions to

"address [Philip Friend's] arguments and *explicitly weigh them against the admitted*

*gravity of the various offenses*." J.A. 596 (emphasis added).  The district court failed

to do so, and this Court should again reverse the sentence.

1

Philip Friend presented thorough, reasoned arguments for a sentence less than 52 years under 18 U.S.C. § 3553(a).  He argued that the seriousness of the offense and need to provide just punishment (the retributive factors, *see* 18 U.S.C. § 3553(a)(2)(A)) were mitigated by his age (15 years old); his inability to make considered judgment due not only to age but a learning disability and spending his developmental years in an environment of abuse, trauma, and chaos; his inability, given his age and vulnerable condition, to extricate himself from the influence of the leaders and perpatrators of the actual murder – his older brothers and mother; and his role in the offense as a helper who did not personally cause the death of the victim.  AOB 22-23.

He argued that the need for deterrence and protection of the public, *see* 18 U.S.C. § 3553(a)(2)(B), (C) were reduced because he had demonstrated maturity through 20 years of exemplary prison conduct, evidenced by his prison record, testimony of a BOP case manager, a psychologist and a psychiatrist, and detailed letters from fellow inmates.  AOB 24-25.

He also pointed out that a sentence such as the one the district court eventually imposed would create an unwarranted disparity with similarly situated defendants resentenced after *Miller v. Alabama*, 560 U.S. 460 (2012), most of whom (as shown by an exhaustive and detailed review of the records) had less promising records of

rehabilitation, more direct participation in the offense, and were older than Philip, but received lower sentences.  AOB 26.

The district court certain heard, and later summarized the factual evidence presented. J.A. 825-29.  But when it came time to explain how this evidence affected its determination of the final sentence under § 3553(a), the district court's explanation was lacking. It tersely said it would "give [Philip] some credit" because he had "matured some[.]"  J.A. 819.  The arguments regarding his age, history of abuse, mental conditions, family influence, and role in the offense were addressed only in passing, in two half-sentences which emphasized the seriousness of the offense:

> Even though other family members undoubtedly influenced the defendant's behavior, the evidence revealed that he was not simply a passive bystander, but a willing, active participant, knowing his actions would have tragic consequences.
>
> . . .
>
> While the defendant's adjustment to a custodial setting has been impressive, and the expert's prediction has been that the prospects of him living a crime-free life are favorable, the gravity of these offenses weigh very heavily. He was not an idle bystander, but an active participant in torturing and murdering two individuals, and viciously maiming a third; none of whom offered active resistance until their lives were in imminent danger.

J.A. 825, 830.  These statements are not materially different from the district court's remarks at the 2017 resentencing, which this Court determined to be insufficient.

J.A. 577-79.  A proper sentencing explanation requires more than a mention of the significant mitigation in the course of discussing the seriousness of the offense.  It requires explanation and analysis.

A.   The District Court Did Not Explain Its Rejection of Mitigation Arguments in Light of the Statutory Sentencing Factors

This Court's cases emphasize and reemphasize that a district court must do more than simply acknowledge mitigation arguments; it must "explain its assessment" of those arguments, *United States v. Webb*, 965 F.3d 262, 271 (4th Cir. 2020); it must "justify[] rejection of arguments" in mitigation, *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019); it must not only "address" the arguments but must "explain whether and why it rejected them[,]" *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017), "not merely in passing," but "as part of its analysis of the statutory factors and in response to defense counsel's argument."  *United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010).  In light of this principle, this Court instructed the district court on remand to "address [Philip Friend's] arguments and *explicitly weigh them against the admitted gravity of the various offenses*." J.A. 596 (emphasis added). Here, the district court undoubtedly heard and acknowledged the arguments in mitigation.  But even with that specific instruction on remand, it did not *explain how* it weighed those arguments to reach a final sentence under § 3553(a) as required by *Webb*, *Ross*, *Blue*, and *Lynn*.  AOB 19-33.

In response, the government cannot point to a single place in the record where the district court "explain[ed] its assessment" of the arguments in mitigation in light of the § 3553(a) factors. Like the district court, the government simply repeats and emphasizes the gravity of the offense and the effect on the family of the victims. GB 44-45. It concludes that the district court "found that the argument and evidence that defendant presented simply did not outweigh the gravity of the crimes." GB 44 (lack of citations in original). But *it cannot provide a citation to anywhere in the record for this assertion*. The weighing it imagines never happened on the record. The record must make the district court's rationale "patently obvious," *Blue*, 877 F.3d at 521; this Court cannot "search[] the record for . . . clues that might explain a sentence." *Ross*, 912 F.3d at 745. This is the heart of the procedural error described in *Webb*, *Ross*, *Blue*, and *Lynn*. The government's inability to point to anywhere in the record where the district court confronted and analyzed mitigation arguments dooms its argument.

The district court mentioned the mitigation *evidence*, but was unable to recount mitigation *arguments* in even a full sentence without returning to the seriousness of the offense. J.A. 825, 830. Therefore, Philip Friend relied heavily in his opening brief on *United States v. Guglielmi*, 929 F.2d 1001 (4th Cir. 1991), in which the district court's similar preoccupation with the seriousness of the offense prevented it from properly considering mitigation arguments, resulting in a remand

and reassignment. AOB 29-32. The government does not even cite to *Guglielmi* in its response, let alone attempt to distinguish or criticize it. The government's reluctance is understandable, because *Guglielmi* is directly on point and requires the same result here.

In *Guglielmi*, this Court reversed the denial of a motion to reduce sentence due to the district court's preoccupation with the offense severity to the exclusion of other relevant factors, and remanded to a different district court. *Id.* at 1006-07. At a second hearing after a remand, the defense pointed out in mitigation that the defendant had been a model prisoner, had good character, his wife was wheelchair-bound, and his son committed to an institution. *Id*. However, "[i]n only two sentences did the district court appear to have weighed its own view of the gravity of the offenses against factors relating to the person charged" in which the court noted the defendant's "superb institutional record" but asserted that it did not "detract from the Court's principal reason for incarceration, … deterrence." *Id.* at 1003-04.

This Court reversed again and remanded to a different judge, because the district court had "not sufficiently balanced, or demonstrated a balancing of, the nature and character of the offense against Guglielmi's record and his personal character[.]" 929 F.2d at 1005. This Court held that the "unwavering focus upon [the offense] at the expense of other considerations" constituted an abuse of

discretion. *Id.* at 1005-06. The "mere reemphasis" of the seriousness of the offense, "no matter how extensive the analysis or how forceful and graphic the language, falls short of demonstrating a meaningful exercise of discretion[.]" *Id.* at 1006.

*Guglielmi* is indistinguishable from this case, down to the detail of how many sentences the district court accorded mitigation arguments, and its preoccupation with and "reemphasis" of the seriousness of the offense. This Court should reach the same result, vacate the sentence, and remand to a different judge.

### B. The District Court Violated the Mandate

This Court instructed the district court on remand to "address [Philip Friend's] arguments and *explicitly weigh them against the admitted gravity of the various offenses.*" J.A. 596 (emphasis added). This Court's mandates must be "scrupulously and fully carried out" by district courts. *Mangum v. Hallembeak*, 910 F.3d 770, 775 (4th Cir. 2018). Therefore this Court should "analyze the district court's decision not only against the record, but also for conformity to the mandate [it] issued in [its] earlier ruling in this case." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019).

To the extent the government argues that the district court *implicitly* weighed mitigation arguments, based on hearing those arguments and imposing a particular sentence, that argument is barred by the mandate rule. The government does not acknowledge this principle, but it forecloses any argument that the required

explanation can be gleaned from anywhere in the record but the district court's explicit statements.

## II. THE SENTENCE WAS SUBSTANTIVELY UNREASONABLE BECAUSE THE DISTRICT COURT DID NOT WEIGH PHILIP FRIEND'S YOUTH AND RELATED CONSTITUTIONALLY-REQUIRED MITIGATION AGAINST THE SERIOUSNESS OF THE OFFENSE

The government does not dispute that appellate review of the substantive reasonableness of a sentence, although deferential, requires this Court to weigh the § 3553(a) factors in light of the totality of the circumstances; and to consider whether the emphasis the district court placed on each factor can bear the weight the district court assigned it. AOB 35.

In his opening brief, Philip Friend argued that the 52-year sentence was greater than necessary to serve the § 3553(a) factors in three respects: (1) it was not necessary to deter Philip and protect the public, in light of his now-established maturity and record of excellent behavior over 20 years in prison; (2) it created unwarranted disparities with other federal *Miller* resentencing outcomes; and (3) it was disproportionate to the seriousness of the offense and just punishment, because of Philip's lower moral culpability as a child and follower of his older brothers, who personally killed the victims. AOB 35.

1. As it did in the district court, the government abandons any claim that 52 years is necessary to deter Philip and protect the public. It does not dispute that his

record of rehabilitation is extraordinary and relevant. *Compare* AOB 35-37; GB 38-42 (no mention of deterrence or protection of the public as applied to Philip in entire argument on substantive reasonableness).

2. On the second point, however, the government disputes that § 3553(a)(6), avoiding unwarranted disparities, is capable of appellate review at all. GB 40. In support it cites *United States v. Rivera-Santana*, 668 F.3d 95, 105-06 (4th Cir. 2012). GB 40-41. But *Rivera-Santana* does not help the government – it actually supports Philip Friend's argument. In *Rivera-Santana*, this Court was "satisfied that the district court, in fashioning its sentence, considered 'the need to avoid unwarranted sentencing disparities . . .'"). *Id.* at 105. The district court there, in fact, "emphasized that this was an atypical case given Rivera-Santana's criminal history[.]" *Id.* Therefore, this Court has held, it is only the comparison of the defendant where the comparators have "*dissimilar* offenses, circumstances, and criminal histories." *United States v. Chandia*, 675 F.3d 329, 342 (4th Cir. 2012) (emphasis added).

Therein lies the problem for the government. Cases that are materially *dissimilar* are not relevant to § 3553(a)(6); but cases that are materially *similar* must be considered. The government does not even attempt to explain how the cases Philip Friend presented for comparison are dissimilar in any material way. The data was comprehensive and included both the circumstances of the offense and the history and characteristics of each defendant. AOB 26-28; J.A. 623-57 (case

summaries and comparisons); J.A. 773-99 (testimony of Professor Julie McConnell summarizing data); J.A. 611-13 (position on sentencing); J.A. 723-24 (response to government position); J.A. 812-15 (argument, discussing particular cases, statistics, invoking § 3553(a)(6)). They were all Philip's age (15) or older. They all were convicted of murder, many of multiple murders. They all had guidelines of life. They all had in-prison rehabilitation records either like Philip's or worse. Most even went to trial instead of pleading guilty and accepting responsibility. And nearly all received lower sentences. The government does not point to any way in which the comparators are dissimilar from Philip Friend.

The primary motivation for enactment of the Sentence Reform Act and the Guidelines regime was the disrepute in the eyes of the public that fell upon the judiciary for imposing disparate sentences on similarly situated defendants. *See Mistretta v. United States*, 488 U.S. 361, 365-66 (1989) (discussing debates leading to enactment of Sentencing Reform Act, quoting Senate report calling disparities under indeterminate regime "shameful"). Given this background, it does not overstate matters to say that § 3553(a)(6) is the soul of the Sentencing Reform Act. It would be odd, to say the least, for this Court to disavow any ability to enforce an explicit statutory mandate to "avoid unwarranted disparities" among similarly situated defendants.

As Philip Friend pointed out, the Sixth Circuit has consulted individual cases and statistics to evaluate whether a particular sentence avoids unwarranted disparities. AOB 26 (discussing *United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019). The government does not even acknowledge *Boucher* in its response.

The government also cites the guidelines range of life in prison without parole, and the presumption of reasonableness for within- or below-guidelines sentences to argue that any sentence below life "necessarily complies with § 3553(a)(6)." GB 41 (citations, quotations omitted). In the ordinary case, the Guidelines are a potent mechanism for promoting sentencing uniformity. But the guidelines range of life without parole in this case *violates the Eighth Amendment*. Whatever the principles involved in other cases, it cannot logically be the case that an unconstitutionally cruel and unusual punishment sets the baseline for comparison between similarly situated defendants, all of whom necessarily received less-than-life sentences. Even the district court recognized this. J.A. 578 ("[E]very lawyer in this courtroom understands that the constitutionality and legal firmness of that guideline is questionable at this point."). The guidelines fail to fulfill that goal when they dictate a sentence that cannot legally be imposed on any similarly situated defendant because it is forbidden by the Constitution. For example, in *Peugh v. United States*, 569 U.S. 530 (2013), the Supreme Court forbade the use, as a starting point and basis for presumption, of a guideline range that violated the Constitution. In that case, it

was the *Ex Post Facto* Clause; but the same principle applies with even more force where the guideline range is substantively unconstitutional.

3. Third, the government defends the district court's overweening emphasis on the seriousness of the offense. It points out that it can be reasonable for a district court to attach "great weight to a single factor." GB 39 (quoting *United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007). But Philip did not argue that the district court could not place great weight on a single factor; he argued that the district court cannot place such weight on a factor that it prevents the district court from properly considering other mitigating factors, especially those such as youth that are constitutionally required for juveniles. AOB 35. In *Miller* the Supreme Court was explicit that no matter how serious the offense, "we require [the sentencing court] to take into account how children are different[.]" Here, the district court's fixation on the seriousness of the offense prevented it from following *Miller*, and rendered the result substantively unreasonable, based as it was almost exclusively on retribution. J.A. 825, 830.

III. THE SENTENCE VIOLATED THE EIGHTH AMENDMENT, WHICH FORBIDS NOT ONLY MANDATORY LIFE WITHOUT PAROLE FOR JUVENILES, BUT ANY SENTENCE FOR A NON-INCORRIGIBLE JUVENILE THAT DENIES A MEANINGFUL OPPORTUNITY TO REENTER SOCIETY

Philip Friend argued that the 52-year sentence violated the Eighth Amendment. AOB 42-55. On the law, he argued that *Miller* and *Montgomery v.*

*Louisiana*, 136 S.Ct. 718 (2016) apply to term-of-years sentences, and require a meaningful opportunity to reenter society for non-incorrigible defendants. AOB 43-50. Applied to the facts of this case, he pointed out that Philip was 15 years old at the time of the offense, and would be released at the earliest when he is in his sixties, with no adult life experience, family support, or opportunity to participate in most parts of life that matter. AOB 53. Therefore he argued that the 52-year sentence did not provide the required meaningful opportunity for life outside prison. In support, he noted cases from many states that had reversed sentences of similar length as violative of the Eighth Amendment. AOB 49-51.

The government's first response is to deny the premise of the argument. It argues that the Eighth Amendment has nothing to say about a term-of-years sentence imposed on a juvenile, and forbids only (1) mandatory, (2) formal life-without-parole sentences for juveniles who are not incorrigible. GB 31. In support, it cites three cases approving a lengthy term-of-years sentences imposed on juveniles, but ignores the two federal circuits and six state Supreme Court opinions that support Philip Friend's argument. In passing, it criticizes the benchmarks other courts have used to determine whether a term-of-years sentence runs afoul of the Eighth Amendment (but offers no standard of its own). GB 35-36. Last, it argues that alternative avenues of release such as resentencings and the availability of a reduction under 18 U.S.C. § 3582(c) are constitutionally sufficient substitutes for

parole.  GB 32-33.  Last, the government argues that the Eighth Amendment has nothing to say about child-defendants who commit multiple crimes; they can be sentenced in the aggregate to terms of prison that preclude living release without implicating *Miller* at all.  GB 36-37.

The government is wrong on all counts: First, the Eighth Amendment is a substantive guarantee to redeemable child-defendants of a meaningful opportunity for rehabilitation outside of prison.  A term-of-years sentence that takes that away can violate the Eighth Amendment.  Life expectancy is a useful, if not dispositive, benchmark for predicting whether an individual will have a meaningful opportunity to live outside prison; and the state Supreme Courts that have held that sentences of 50 years for a juvenile violate the Eighth Amendment are well-reasoned and persuasive.  Second, the avenues of early release the government cites are not constitutionally sufficient substitutes for parole, because they do not allow a defendant to obtain release based on rehabilitation.  Last, cases approving multiple consecutive sentences for multiple crimes are inapposite because Philip Friend received a unitary sentence.

A. The Eight Amendment Forbids Discretionary Term-of-Years Sentences That Deprive a Corrigible Juvenile of a Meaningful Opportunity for Life Outside Prison

1. The Eight Amendmen is Not Limited to Mandatory Sentences

The government takes one quotation from *Montgomery* out of context to support its position. It asserts that "the Supreme Court has agreed with the state respondent that '*Miller* did *not* require trial courts to make a finding of fact regarding a child's incorrigibility." GB 29 (quoting *Montgomery*, 136 S. Ct. at 745 (emphasis in government brief). The necessary thing, the government asserts, "is a '*hearing*' where 'youth and its attendant characteristics are considered as sentencing factors.'" GB 29 (emphasis in government brief only). Out of context, and with the government's added emphasis, this suggests that *Miller* requires only a hearing, and not a substantive result.

But *Miller* governs the substance of the sentence, not the procedure, as the full context of the government's quote shows. In *Montgomery*, Louisiana argued that, because there was no formal factfinding requirement on incorrigibility, there was no constitutional distinction between incorrigible children and those capable of rehabilitation. The Supreme Court rejected this argument. The Supreme Court simply did not require "formal factfinding" because it left states free to use their own procedures to implement the *substantive* guarantee of *Miller*. The full quote is:

Louisiana suggests that *Miller* cannot have made a constitutional distinction between children whose crimes reflect transient immaturity and those whose crimes reflect irreparable corruption because *Miller* did not require trial courts to make a finding of fact regarding a child's incorrigibility. That this finding is not required, however, speaks only to the degree of procedure *Miller* mandated in order to implement its substantive guarantee. When a new substantive rule of constitutional law is established, this Court is careful to limit the scope of any attendant procedural requirement to avoid intruding more than necessary upon the States' sovereign administration of their criminal justice systems. See *Ford v. Wainwright,* 477 U.S. 399, 416–417, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) ("[W]e leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences"). Fidelity to this important principle of federalism, however, should not be construed to demean the substantive character of the federal right at issue. That *Miller* did not impose a formal factfinding requirement does not leave States free to sentence a child whose crime reflects transient immaturity to life without parole. To the contrary, *Miller* established that this punishment is disproportionate under the Eighth Amendment.

*Id.* Taken in context, the full quote holds the opposite of what the government implies with its selective quotation. The Eighth Amendment does not dictate formal procedure, it governs substantive results.

From its incorrect premise, the government argues that the Eighth Amendment was satisfied because Phillip Friend has been "permitted, twice, to

*argue for* leniency . . . invoking his juvenile status."[1] GB 31 (emphasis added). Of course, being "permitted . . . to argue" is only the first step to compliance with the Eighth Amendment. The district court must then actually "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 480. That did not happen in this case and is the basis for this Eighth Amendment claim.

### 2. The Eight Amendment Applies to Term of Years Sentences, Not Just Formal Life Sentences

Philip Friend's sentence is not a formal life without parole sentence. Whether *Miller* applies to a term-of-years sentence is, the parties agree, an issue that has divided the Circuit Courts of Appeals and state Supreme Courts, and on which this Court has not yet ruled. GB 34; AOB 47-48. On one side, the Fifth, Sixth, and Eighth Circuits, and South Carolina and Missouri hold that the Eighth Amendment and *Miller* have no relevance to a sentence denominated as a term of years, as opposed to a formal life-without-parole sentence. *See United States v. Sparks*, 941 F.3d 748 (5th Cir. 2019); *United States v. Jefferson*, 816 F.3d 1016, 1019 (8th Cir. 2016); *Bunch v. Smith*, 685 F.3d 546, 550 (6th Cir. 2012); *State v. Slocumb*, 827 S.E.2d 148 (S.C. 2019); *State v. Nathan*, 522 S.W.3d 881 (Mo. 2017) (en banc). On

---

[1] "Permitted" as used by the government, implies an act of indulgence. Defendants are not just "permitted" to exercise Constitutional rights; it is more accurate to say that the government has been compelled, twice, to respect those rights.

the other side, the Seventh, Ninth and Tenth Circuits, and Connecticut, Ohio, Iowa, Idaho, Illinois, California, New Jersey, Wyoming, and Maryland all hold that *Miller* and the Eighth Amendment do apply to term-of-years sentences. *See McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016); *Moore v. Biter*, 725 F.3d 1184, 1194 (9th Cir. 2013); *Budder v. Addison*, 851 F.3d 1047, 1053, n.4 (10th Cir. 2017); *Casiano v. Comm'r of Correction*, 115 A.3d 1031, 1046 (Conn. 2015); *State v. Moore*, 76 N.E.3d 1127, 1138 (Ohio 2016); *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013); *State v. Shanahan*, 445 P.3d 152, 159 (Idaho 2019); *People v. Reyes*, 63 N.E.3d 884, 888 (Ill. 2016); *People v. Contreras*, 411 P.3d 445, 455. (Cal. 2018); *State v. Zuber*, 152 A.3d 197, 212 (N.J. 2017); *Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014); *Carter v. State*, 192 A.3d 695 (Md. 2018).

The latter cases have the better argument under *Miller*, *Montgomery*, and the Eighth Amendment. For one, the text of the Eighth Amendment does not support the idea that a court can look to the terms of the judgment on paper, as opposed to what actually happens to a defendant in reality. The Eighth Amendment directs that "cruel and unusual punishments" shall not be "inflicted" – not that such "sentences" shall not be "imposed." U.S. Const. amend. VIII. The word "inflicted" refers not to the terms of the judgment but *how it is executed*. And there is no difference in how a formal sentence of life without parole and a formal sentence of, for example, 100 years are "inflicted" on the defendant. And, as explained above, § III.A.1,

*Montgomery* held that the Eighth Amendment and *Miller* provide a substantive guarantee, not simple a procedural one. It eschewed the sort of formalism that the government advocates for now. By approving parole as a back-end *Miller* determination in *Montgomery*, the Supreme Court held that the *imposition* of a life sentence does not violate the Eighth Amendment so long as there is a chance to avoid its *execution* through parole. Therefore those courts holding that the Eighth Amendment has no relevance to term-of-years sentences that operate as functional life are simply wrong under the plain text of the Eighth Amendment and *Montgomery*.

> 3. <u>The Fifty-Two Year Sentence Does Not Provide a Meaningful Opportunity to Demonstrate Rehabilitation Outside Prison</u>

Of course, 52 years is not 100 years, and could result in Philip Friend's release in his sixties. Therefore the next step of the analysis must decide where, as a matter of law, to draw the line between term-of-years sentences that, for juveniles, violates the Eighth Amendment and those that don't. Philip argued in his opening brief that the 52-year sentence imposed would not allow him a meaningful opportunity to demonstrate rehabilitation outside of prison, in violation of *Graham v. Florida*, 560 U.S. 58 (2010), *Miller*, and *Montgomery*. AOB 51-54.

The vast weight of authority on this point supports Philip Friend, as he pointed out. AOB 47. Many courts have drawn the line around the 50-year mark. *See*

*Casiano v. Comm'r of Correction*, 115 A.3d 1031 (Conn. 2015) (50 years without possibility of parole violates *Miller*); *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013) (aggregated sentences totaling 52.5 years violates Eighth Amendment); *People v. Contreras*, 411 P.3d 445, 455. (Cal. 2018) (50-year sentence violates *Graham* and Eighth Amendment); *State v. Zuber*, 152 A.3d 197, 212 (N.J. 2017) (reversing 50-year sentence as violating *Miller* and Eighth Amendment); *Bear Cloud v. State*, 334 P.3d 132, 142 (Wyo. 2014) (aggregate sentence of 45 years was *de facto* life sentence in violation of *Miller*, following *Null*, 836 N.W.2d at 71)); *Carter v. State*, 192 A.3d 695 (Md. 2018) (sentence with parole eligibility only after 50 years was *de facto* life sentence in violoation of *Graham*, *Miller*, Eighth Amendment). This is also supported by federal *Miller* resentencing data, which shows the vast majority of sentences around 25-30 years for *Miller* resentencings of non-incorrigible juveniles. J.A. 650-57 (comparison graphs).

Philip Friend pointed out in his opening brief that the Supreme Court itself had endorsed the usefulness of life expectancy data. AOB 47; *Sumner v. Shuman*, 483 U.S. 66, 83 (1987) ("[T]here is no basis for distinguishing, for purposes of deterrence, between an inmate serving a life sentence without possibility of parole and a person serving several sentences of a number of years, the total of which exceeds his normal life expectancy."). The government does not acknowledge *Sumner* or attempt to explain why it is not relevant.

The government criticizes the use of life expectancy statistics as indeterminate, GB 35-36, and claims that "as a legal matter, the Eighth Amendment does not incorporate statistical modeling." GB 36. The government's quibble, it appears, is with the predictive nature of sentencing itself. Because the Eighth Amendment requires courts sentencing juveniles to predict the potential for rehabilitation, and if the defendant is not irreparably corrupt, to impose a sentence that allows a meaningful opportunity for life outside prison. This in turn requires the Court to make predictions about whether and how a defendant will mature, and over what timeframe – that is, what he will be like when released. Of course, the Eighth Amendment may not dictate *how* to make that determination, but the government does not propose any more useful or reliable method than looking to empirical evidence to estimate how much time Philip Friend will get to spend outside prison, and then whether that is enough for a meaningful opportunity to live in society. Since the Supreme Court and other appellate courts have found such information useful, this Court should too consider the evidence presented on Philip's life expectancy to determine whether he will have a meaningful opportunity to demonstrate rehabilitation outside prison. AOB 47, J.A. 603-604.

B.  Compassionate Release is Not Equivalent to Parole

The government relies on compassionate release under 18 U.S.C. § 3582(c)(1) to argue that Philip Friend has the constitutional equivalent of an opportunity for

parole.  GB 32-33.  It is wrong because the statute prohibits a reduction due to rehabilitation, which makes it insufficient to serve as a procedural alternative to parole.

Parole is a valid procedure for implementation of *Miller*'s substantive guarantee of an opportunity for life outside prison.  In *Montgomery*, the Supreme Court held, essentially, that the particular procedure states use to implement the substantive guarantee of *Miller* was not important.  So a state may "remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."  136 S. Ct. at 736.  The government argues that the recent amendment to 18 U.S.C. § 3582(c) (colloquially "compassionate release"), allowing defendants to move for a reduction in sentence due to extraordinary and compelling circumstances, is a constitutionally sufficient substitute for parole.  GB 33.  It is not.  The Supreme Court approved the use of parole because it "ensures that juveniles whose crimes reflected only transient immaturity – and who have since matured – will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."  *Id*.  Therefore, a parole hearing must allow the defendant to obtain release based on rehabilitation and maturity.  Section 3582 does no such thing.  To the contrary, it requires a showing of "extraordinary and compelling circumstances" to justify a reduction.  More to the point, Congress has expressly forbidden a reduction in sentence based on

rehabilitation alone.  28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  Therefore it cannot serve as a back-end procedural door for *Miller*, because it prohibits release based on the one thing that the Supreme Court said the releasing authority is required to consider for Eighth Amendment purposes – rehabilitation.

Last, the government abandons its prior formalism and makes the indefensible claim that the two resentencings Philip Friend has received "are arguably themselves not functionally different than receiving two parole hearings[.]"  GB 33.  Not so. First, parole decisions are revisited periodically, and release can be ordered at any point when a defendant has shown rehabilitation.  Criminal sentences contained in a judgment affirmed on appeal become final and cannot be altered except under extraordinary circumstances.  Second, the government begs the question. Philip Friend's first resentencing was vacated as procedurally unreasonable, and his second is currently under review and not final.  He has not received a single proper resentencing, and certainly not a final one.

C.     This Case Does Not Involve Multiple Consecutive Sentences

The government points out that in *O'Neil v. Vermont*, 144 U.S. 323, 332 (1892), the Supreme Court held that the Eighth Amendment would not prescribe functional life sentences for multiple burglaries.  GB 36.  *O'Neil* involved an adult defendant; it was then and still now is the law that a sentence of life in prison for an

adult defendant convicted of serious crimes does not violate the Eighth Amendment. If the government is arguing that a juvenile could be subjected to the functional equivalent of life without parole for two crimes, but not for one, then it runs headlong into *Miller* and *Montgomery* and the Eighth Amendment, for the same reasons that a single term-of-years sentence can violate the Eighth Amendment. *See infra* § III.A.2.

The government next tries by torturous analogy to reason *Miller* and *Montgomery* into irrelevance. Its argument goes like this: Philip Friend participated in multiple crimes; therefore he *could have been* sentenced separately and consecutively for each; and three states have held (based on hundred-twenty-eight-year-old "dicta" from *O'Neil*, *see Ali v. Roy*, 950 F.3d 572, 573 (8th Cir. 2020)) that the cumulative effect of separate sentences does not implicate the Eighth Amendment in any way. Therefore, the government argues, any sentencing court confronted with a juvenile who has committed more than one crime can simply ignore *Miller* and *Montgomery*, and impose a functional life sentence by dividing

the required time into multiple shorter sentences and running them consecutively. GB 35-37.[2] Problem solved![3]

There is an unsolved problem for the government particular to this case, though "The Constitution's protections are not so malleable." *Budder v. Addison*, 851 F.3d 1047, 1056 (10th Cir. 2017) ("Limiting the Court's holding by this linguistic distinction would allow states to subvert the requirements of the Constitution by merely sentencing their offenders to terms of 100 years instead of 'life.'). In any event, Philip Friend is not challenging the cumulative effect of multiple sentences, which is the necessary predicate for the cases the government relies on. GB 36-37. They stand only for the proposition that "the cumulative effect of multiple sentences is irrelevant to Eight Amendment analyses." *Ali*, 950 F.3d at 573. When the Eighth Amendment *doesn't* apply, the Courts can disregard *Miller* and *Montgomery*. That was the basis for the decisions the government cites. *Id*. at

---

[2] The government goes as far as to parse out Philip Friend's unitary 52-year sentence to a certain number of years per victim, with no basis in the record for doing so. GB 37. The district court certainly never attempted such an exercise, and never considered whether concurrent or consecutive sentences would have been appropriate if it had. *See* 18 U.S.C. § 3584(b) (listing factors for district courts to consider in deciding whether to run sentences consecutively or concurrently). The government is trying to defend an alternative hypothetical sentence that was never considered or imposed.

[3] In his opening brief, Philip Friend noted a case where a sentencing court had actually tried what the government proposes doing in theory, and was reversed on appeal. AOB 47 (quoting *State v. Moore*, 76 N.E.3d 1127, 1138 (Ohio 2016)).

573 ("The Minnesota Supreme Court therefore declined to apply *Miller* and *Montgomery* to Ali's case."); *State v. Slocumb*, 827 S.E.2d 148, 155 (S.C. 2019) ("The only reason his aggregate sentence exceeds his life expectancy is because he committed so many crimes, not because a single sentence is disproportionately lengthy."); *State v. Nathan*, 522 S.W.3d 881, 891 (Mo. 2017) (en banc) ("*Miller* did not address the constitutional validity of consecutive sentences, let alone the cumulative effect of such sentences.")[4].

Here, it is already the law of the case that *Miller* and *Montgomery* apply, and the asserted violation of the Eight Amendment does not arise from the effect of multiple consecutive sentences but a single unitary term of 52-years. *O'Neil* and its successors are irrelevant.

## CONCLUSION

For the reasons presented above and in the opening brief, the 52-year sentence imposed by the district court on Philip Friend was procedurally and substantively unreasonable, and violates the Eighth Amendment. Mr. Friend respectfully asks this Court to reverse and remand for resentencing.

---

[4] *Nathan*'s alternative holding was simply that *Miller* only applies where a sentence of life without parole is mandatory. *See id.* The contrary, and more numerous and persuasive cases, are reviewed in AOB 47-50.

Respectfully submitted,

GEREMY C. KAMENS
Federal Public Defender
for the Eastern District of Virginia

s/ Joseph S. Camden
_____
Joseph S. Camden
Robert J. Wagner
Assistant Federal Public Defenders
Counsel for Appellant
701 East Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0800
robert_wagner@fd.org
joseph_camden@fd.org

Dated October 23, 2020

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This Reply Brief of the Appellant has been prepared using Microsoft Word 2016 software, Times New Roman font, 14-point proportional type size.

2.      EXCLUSIVE of the table of contents, table of authorities, and the certificate of service, this brief contains no more than 6,500 words, specifically 5,984 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

| | |
|---|---|
| _____October 23, 2020_____ | ____s/__Joseph S. Camden_____ |
| Date | Assistant Federal Public Defender |